**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

EMI TECHNOLOGIES, INC.,

    Plaintiff,

v.                                                                        CV 10-196 WPL/CEG

LANDSTAR SYSTEM, INC.,
LANDSTAR INWAY, INC.,
LANDSTAR RANGER, INC., and
LANDSTAR RMCS, INC.,

    Defendants.

**ORDER**

This matter is before me on Defendant Landstar Inway, Inc.'s (Landstar) Motion to Dismiss for Failure to State a Claim on Which Relief can be Granted. (Doc. 25.) For the reasons that follow, the motion will be granted in part and denied in part.

**STANDARD OF REVIEW**

Failure to state a claim on which relief can be granted may be raised in any pleading allowed under Rule 7(a), by a motion for judgment on the pleadings, or at trial. *See* FED. R. CIV. P. 12(h)(2). A motion to dismiss raised after the filing of an Answer, however, "is properly asserted by a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) rather than a motion to dismiss under Rule 12(b)(6)." *Potts v. OK Transfer and Storage, Inc.*, No. CIV-07-1274-D, 2008 WL 2404758, at *1 (W.D. Okla June 11, 2008). Ultimately, whether the motion is styled as a motion pursuant to 12(b)(6) or 12(c) is of little significance as the standard of review is the same under both rules. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

Here, Plaintiff EMI Technologies, Inc. (EMI) filed an initial Complaint and Landstar filed

an Answer. EMI then filed an Amended/Corrected Complaint and Landstar filed the instant motion to dismiss pursuant to 12(b)(6), 12(c), and 12(h)(2). The filing of EMI's amended complaint essentially starts the process over. Thus, Landstar's motion to dismiss is properly before this court as a motion to dismiss pursuant to Rule 12(b)(6) because Landstar has yet to file its Answer.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]e accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." *Nelson*, 419 F.3d at 1119 (citation omitted).

## BACKGROUND

EMI contracted with Landstar to ship a trailer and test equipment valued at approximately $800,000 from Las Cruces, New Mexico, to Lexington, Massachusetts, on July 14, 2008. In connection with the shipment, EMI purchased and paid for increased loss coverage. The terms of the parties' agreement were reflected in the bill of lading. At some point during shipping, EMI's property was damaged. Immediately upon delivery, EMI discovered the damage. And within 48 hours of delivery, EMI reported the damage and the existence of a claim to Landstar. Landstar in turn supplied EMI with a claim number.

EMI alleges that it spoke with Brenda Baker, an employee of Landstar RMCS, Inc., on several occasions between the date of delivery and the filing of its claim. EMI further alleges that every time it spoke with Ms. Baker, Ms. Baker represented to Plaintiff that there was no time sensitivity in filing the formal claim for damages. On July 16, 2009, pursuant to Ms. Baker's instructions, EMI overnighted the completed paperwork for a loss and damage claim in the amount of $37,704.12. On July 24, 2009, Landstar RMCS, Inc. denied EMI's claim for damages because

the claim was not filed within nine months of the date of delivery.  EMI argues that nowhere in the bill of lading is there a provision stating that formal damage claims must be filed within nine months of the date of delivery and no such terms were ever understood or agreed upon between EMI and Landstar at the time of contracting.

EMI subsequently brought suit under New Mexico State law theories for breach of contract, breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair trade practices.  The action was originally filed in state court on January 22, 2010, and was removed to this Court on March 4, 2010.  On May 18, 2010, EMI sought to amend/correct its complaint.  (Doc. 17.)  I granted the motion to amend/correct on May 21, 2010.  (Doc. 18.)  On May 31, 2010, Landstar filed the instant motion to dismiss.  (Doc. 25.)

## DISCUSSION

As grounds for this motion, Landstar argues that EMI's state law claims for breach of contract, breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair and deceptive trade practices are all preempted by the Carmack Amendment and therefore, no relief can be granted and these claims should be dismissed.  Landstar further argues that EMI's entire case should be dismissed because no other claims have been pled.  In EMI's response, it now concedes that the Carmack Amendment governs the actual claim for damage during shipping and asserts that it has stated a claim under the Carmack Amendment for property damage.  EMI does not agree, however, that the Carmack Amendment preempts or otherwise precludes its other claims because it argues that these claims are separate as they are based on events that occurred in the months following the shipment.

The principal issue before me is whether EMI's state law claims are preempted by the Carmack Amendment to the Interstate Commerce Act.

> The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, and as part of the Hepburn Act, ch. 3591, 34 Stat. 584 (1906), and was codified at 49 U.S.C. 20(11). It deals with the familiar and historic subject of carrier liability for goods lost or damaged in shipment. The enactment codified the initial carrier's liability.

*Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1115 (10th Cir. 1989).

In *Underwriters at Lloyds of London*, the Tenth Circuit held "that state common law remedies are preempted by the Carmack Amendment." 890 F.2d at 1113. In so holding, the Tenth Circuit overruled its prior decisions in *L.E. Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 F.2d 488 (10th Cir. 1964), *Litvak Meat Co. v. Baker*, 446 F.2d 329 (10th Cir. 1971), and *Reed v. Aaacon Transportation, Inc.*, 637 F.2d 1302 (10th Cir. 1981) and stated:

> Our view in *Whitlock*, *Litvak*, and *Reed*, that the Carmack Amendment "did not oust all other remedial rights of shippers," *Litvak Meat Co. v. Baker*, 446 F.2d at 337, appears to find direct support on the face of the statute, at least as a general proposition. However, there is no legislative and virtually no judicial support for the more specific proposition that state common law negligence remedies continue to exist apart from the federal statute. To the contrary, as illustrated more fully below, the Supreme Court and other authorities have described the Carmack Amendment in broad, preemptive terms, and have relegated the proviso relating to other remedies to a category of almost total insignificance.

*Underwriters at Lloyds of London*, 890 F.2d at 1113. Most notably, in its decision, the Tenth Circuit cited the Supreme Court's observation of the Carmack Amendment in the leading case of *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913). The Supreme Court observed that

> "Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all state regulation with reference to it. . . .
>
> . . . .
>
> . . . The duty to issue a bill of lading and the liability thereby

4

> assumed, are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

*Id.* at 1116 (quoting *Adams Express Co.*, 226 U.S. at 505-06).

EMI argues that *Underwriters at Lloyds of London* is inapposite and that neither its holding nor its rationale are applicable to this case. EMI attempts to make the distinction between damage to the actual goods and Landstar's conduct post shipping and delivery. What EMI fails to recognize, however, is that if not for the damage to the shipped goods EMI's state law claims would not exist. The state law claims are directly connected to, based on, or predicated upon, the damage to the shipped goods.

EMI cites a First Circuit case, *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997), *cert. denied*, 522 U.S. 809 (1997), and a Seventh Circuit case, *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 290 (7th Cir. 1997), for the proposition that the holding in both cases would somehow run contrary to Tenth Circuit precedent. Although neither case is binding on this Court, they are persuasive and address the very issue present here, whether state law claims pertaining to the claims process are preempted by the Carmack Amendment. *See id.*

The Court in *Rini* considered whether the Carmack Amendment preempted the plaintiff's state law claims for negligence, misrepresentation, and violation of a state statute. *Id.* at 503. Of particular significance, in dicta, the *Rini* court stated: "Unfortunately, the Supreme Court case law does not provide clear guidance on the reach of the preemption doctrine. In particular, the Court has not clarified the extent to which state law provisions pertaining to the claims process, as opposed to the shipping of goods, are preempted." *Id.* at 505. The First Circuit cited two Supreme Court cases that it found instructive, *Missouri, Kansas, & Texas Railway Co. of Texas v. Harris*, 234 U.S.

5

412 (1914) and *Charleston & Western Carolina Railway Co. v. Varnville Furniture Co.*, 237 U.S. 597 (1915), and stated that

> [t]hese two cases are of particular relevance to the instant case because the state laws at issue did not govern claims arising directly out of damage to goods. . . . [rather they] consider state remedies that relate to the claims process.
>
> . . . .
>
> The lesson from these cases is that state statues are preempted by the Carmack Amendment if they "in any way enlarge the responsibility of the carrier for loss or at all affect the ground of recovery, or the measure of recovery." *Id.*
>
> The Carmack Amendment and the set of federal regulations that complement it cover not only the actual transport of goods, but they also govern the claims process. For example, the Amendment itself provides that a carrier "may not provide . . . a period of less than 9 months for filing a claim . . . and a period of less than 2 years for bringing a civil action against it under this section." 49 U.S.C. § 11707(e).

*Rini*, 104 F.3d at 505.

The First Circuit further stated that Rini's allegations took place in the course of settling a claim for damages stemming from the move. *Id.* at 506. The only harm suffered by Rini was the loss of goods and thus, the Court held that Rini's state law claims are preempted by the Carmack Amendment. *Id.*

In *Gordon*, the Seventh Circuit agreed with the *Rini* Court and also held that the Carmack Amendment preempts state law claims for breach of contract, fraud, and willful and wanton misconduct. The court in *Gordon* stated that

> the assertion of fraud in the claims handling process is preempted. As the *Rini* court recognized, the claims process is directly related to the loss or damage to the goods that were shipped. Indeed, people would not be involved in the process unless either loss or damage had occurred. The Carmack Amendment speaks to the claims process, by

> imposing both a minimum and a maximum period of time for allowing shippers to file claims.

*Gordon*, 130 F.3d at 289-90. Like in *Rini* and *Gordon*, the only harm suffered by EMI is the damage to its goods.

There are courts that have held that the Carmack Amendment does not preempt all state common law claims. In so holding, these courts have made the distinction, as EMI has here, between the loss and damage to the goods and, allegations in connection with the formation of a contract or with the handling of claims. *See Sokhos v. Mayflower Transit, Inc.*, 691 F. Supp. 1578, 1582 (D. Mass. June 15, 1988). This, however, is the extreme minority view. And I must note that *Sokhos* was effectively overruled by *Rini*.[1] Furthermore, in holding that claims of mistake or fraud in connection with the formation of the shipping contract were not preempted by the Carmack Amendment, the Court in *Sokhos* noted that it agreed with the Tenth Circuit's decision in *Reed*. As Landstar correctly points out, *Reed* also involved the claims handling process. And as previously stated, *Reed* was overruled by *Underwriters at Lloyds of London* on this very point. EMI has not cited a single case in support of its proposition, *Underwriters at Lloyds of London* is binding precedent, and therefore, I cannot entertain EMI's argument.

With regards to Landstar's motion to dismiss as to every claim, EMI now concedes that its breach of contract claim is governed by the Carmack Amendment and asserts that its First Amended

---

[1]
> We are aware that our holding today conflicts with certain previous decisions of the District Court of Massachusetts. In particular, we note that the cases of *Sokhos v. Mayflower Transit Inc.*, 691 F. Supp. 1578 (D. Mass. 1988), and *Mesta v. Allied Van Lines*, 695 F. Supp. 63 (D. Mass. 1988), allowed certain claims that would be preempted under the decision that we lay down today. To the extent these decisions are inconsistent with our holding, they do not represent the law of the circuit.

*Rini*, 104 F.3d at 506 n.3.

Complaint, fairly read, states a valid claim under the Carmack Amendment. In its reply, Landstar merely asks that EMI not be allowed leave to re-plead in order to add new factual allegations. In order to make out a *prima facie* case at trial, the shipper must show that: (1) the goods were received by the carrier in good order and condition; (2) the goods arrived at their destination damaged; and (3) the amount of damages. *See Margetson v. United Van Lines, Inc.*, 785 F. Supp. 917, 922 (D.N.M. 1991) (citing *Mo. Pac. Ry. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964)). EMI's First Amended Complaint does indeed set forth these three elements and thus, states a valid claim under the Carmack Amendment.

## CONCLUSION

EMI's state law claims for breach of covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair and deceptive trade practices are all preempted by the Carmack Amendment. I therefore grant Landstar's motion insofar as it seeks dismissal of Counts II, III, IV, and V. As for Count I, to the extent that it pleads a state law claim for breach of contract, it is dismissed. I find, however, that Count I of EMI's First Amended Complaint sets forth the necessary elements to state a claim for relief under the Carmack Amendment. I therefore deny Landstar's motion to dismiss Count I in its entirety. Accordingly, EMI's state law claim for breach of contract under Count I, and Counts II, III, IV, and V are dismissed with prejudice.

IT IS SO ORDERED.

*William P. Lynch*
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.